# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| EMPIRE TORQUE TOOLS, LLC | § § | |
| Plaintiff, | § § | CASE NO: 4:21-cv-03274 |
| v. | § § § | |
| SPECIALTY WELDING AND TURNAROUNDS, LLC, | § § § | JURY DEMANDED |
| Defendant. | § § | |

## FIRST AMENDED COMPLAINT

Plaintiff Empire Torque Tools, LLC ("Empire") files this First Amended Complaint and in support thereof respectfully shows the Court as follows:

## PARTIES

1. Plaintiff Empire Torque Tools, LLC ("Empire") is a Texas limited liability corporation with its principal place of business located at 9203 Sweetbrush Dr., Houston, Texas 77064 in Harris County, Texas.

2. Defendant Specialty Welding and Turnarounds, LLC ("SWAT") is a Louisiana limited liability company. SWAT has made a general appearance in the case.

## VENUE AND JURISDICTION

3. SWAT submitted to the venue and jurisdiction of this Court without objection and SWAT removed this matter to this Court from Texas state court. In

response to Empire's motion to remand, the Court held that the Court had jurisdiction over this matter.

4. Venue is proper in this Court because, on information and belief, it is the county of SWAT's principal office in the State of Texas, and SWAT has engaged in continuous and systematic contacts with the State of Texas. This Court has both specific and general jurisdiction over SWAT.

## FACTS

5. Empire Torque Tools, LLC ("Empire") is a local, family run business based in Harris County, Texas. Empire rents and sells industrial tools to its customers in the oil and gas industry.

6. Defendant Specialty Welding and Turnarounds, LLC ("SWAT") has a presence in Texas and more than 14 states in total, has thousands of employees, and alleges to have master service agreements with more than 50 U.S. facilities, including some of the world's largest oil refineries. SWAT is owned by Orix Capital Partners a subsidiary of ORIX Corporation USA, a subsidiary of ORIX Corporation. SWAT was previously owned by Hastings Equity Partners.

7. On January 30, 2020, Empire issued a quote to SWAT for SWAT to rent hydraulic wrenches and other industrial tools from Empire for a refinery turnaround job in Kenai, Alaska (the "Alaska Job"), including describing the types of tools to be supplied, the quantity of tools, and pricing, reflecting a rental rate of

$24,122 per week for all the tools shown on the quote.

8. On January 31, 2020, SWAT agreed to Empire's quote and issued a purchase order to Empire. SWAT wrote PO No. 20TM-019-010-B on the face of Empire's quote, and Robert Greeson, a SWAT senior executive, forwarded that document to Empire the same day via text as acknowledgment and agreement to the tools and price in the quote.

9. As is standard in the tool rental business, Mr. Greeson on behalf of SWAT, and Tom Kubala, on behalf of Empire, agreed that Empire's tools remained on rent so long as SWAT had the tools and that SWAT could end the rental at any time by returning the tools to Empire.

10. In February 2020, at SWAT's direction, Empire shipped all of the tools described in Empire's quote to SWAT's jobsite in Alaska.

11. Empire contends that the Rental Tickets shipped with the tools are the Rental Contracts between Empire and SWAT, supplemented by pricing provided by Empire prior to shipping the tools.

12. On March 25, 2020, a month after Empire delivered the tools to SWAT in Alaska, SWAT informed Empire that SWAT needed to cancel the initial purchase order, to revise it, and expand the scope of the order. SWAT informed Empire that SWAT needed the tools SWAT already ordered for longer than initially anticipated and would also need more tools.

13. At the time, SWAT elected to keep Empire's tools in Alaska so they would be available on demand for SWAT's project to avoid costly potential delays of not having the tools on site when SWAT needed the tools for the refinery turnaround. As a result of SWAT's election to keep Empire's tools in Alaska, the tools continued to accrue rent.

14. SWAT's election to keep Empire's tools in Alaska, meant that Empire could not rent those same tools to Empire's other customers.

15. On June 10, 2020, consistent with Empire and SWAT's discussions in March 2020, SWAT ordered more tools to be sent to its jobsite in Alaska on top of the tools Empire had previously shipped. SWAT's June 10, 2020 purchase order indicated that SWAT would pay Empire $4,500 a week for the additional tools.

16. Empire shipped the additional tools to Alaska on June 26, 2020.

17. In July 2020, to address SWAT's ballooning costs on the project, Robert Greeson, a senior executive for SWAT, represented to Tom Kubala, Empire's owner, that SWAT would make Empire SWAT's exclusive vendor for torque tools if Empire would give SWAT a discount on the rental fees owed by SWAT.

18. Unbeknownst to Empire at the time, Johnny Holifield, SWAT's president and CEO, directly approved and authorized Robert Greeson to make that exclusivity representation to Empire.

19. Unbeknownst to Empire at the time, Johnny Holifield never intended

to make Empire's SWAT's exclusive vendor for torque tools.

20. Tom Kubala reasonably relied on Mr. Greeson's representation to make Empire an exclusive vendor. At the time of the representation, Mr. Greeson was a senior executive at SWAT, not a low-level employee. Mr. Kubala and Mr. Greeson had built a solid professional relationship and successful track record of working together over the three years prior to the exclusivity representation, which resulted in Mr. Kubala justifiably believing that Mr. Greeson would and could have SWAT honor the commitment made by Mr. Greeson in Mr. Greeson's capacity as a senior executive at SWAT.

21. Mr. Kubala also justifiably relied on Mr. Greeson's representation based on Mr. Greeson's status and reputation in the industry at the time.

22. At the time of the exclusivity representation, Mr. Holifield and Mr. Greeson understood the bargaining power SWAT had as a result of SWAT's size and demand for the type of tools supplied by Empire. Mr. Holifield leveraged all of that and Mr. Greeson's reputation in the industry, by directing Mr. Greeson to induce Empire to give a discount on rental fees. Mr. Holifield's plan worked as intended. Empire fell for it, and gave SWAT a huge discount on the project.

23. On July 13, 2020, based on SWAT's representation of exclusivity, Empire gave the requested discount to SWAT and issued an invoice to SWAT reflecting that – for SWAT having Empire's tools in Alaska for March, April, May,

June, and July 2020 – Empire was only charging (5) five weeks of rent at $24,122 per week, instead of the (5) five months actually owed by SWAT.

24. In August 2020, for reasons unrelated to Empire, SWAT terminated Mr. Greeson.

25. On or around September 24, 2020, SWAT returned most all of Empire's tools, ending the tool rental. SWAT did not return *any* of Empire's tools prior to September 24, 2020.

26. SWAT paid the amounts shown on Empire's discounted invoices at a mutually agreed upon amount and discount.

27. After the Alaska Project, SWAT never used Empire again.

28. After the Alaska Project, SWAT did not make Empire SWAT's exclusive vendor for torque tools.

29. As a result of SWAT not honoring its commitment and not satisfying the conditions of the discount, SWAT is not entitled to the discount it received, and Empire now seeks complete payment from SWAT at the rental rate for the entire rental period at the rental price SWAT agreed to when SWAT ordered the tools. Excluding interest and attorney's fees, SWAT's current outstanding balance is **$514,393.99**. The balance due is calculated based on the total rental charges owed by SWAT for the rental period less a credit to SWAT for amounts already paid.

## CAUSES OF ACTION

## COUNT 1 - BREACH OF CONTRACT

30. Empire incorporates by reference the allegations set forth in each of the preceding paragraphs as though they were set forth herein.

31. This lawsuit involves valid, enforceable rental contracts.

32. Empire is the proper party to bring suit for breach of the contracts, and Empire and SWAT are the parties to the contracts.

33. SWAT rented equipment from Empire, at an agreed upon price, at a price based on industry standards, and/or at a price based on the parties' course of performance.

34. Empire supplied to SWAT the equipment requested by SWAT and Empire fully performed its obligations under the parties' contract.

35. Empire fully and/or substantially performed its contractual duties.

36. More than 30 days have elapsed since the execution of the contracts.

37. Empire satisfied all conditions precedent under the contracts. All conditions precedent have been performed by Empire.

38. SWAT took equipment from Empire as rentals. SWAT breached the contract by not paying the rental amounts on the tool rentals.

39. SWAT's breach of the parties' contract caused injury to and damaged Empire.

40. Empire seeks to recover its actual damages, economic damages, expectancy damages, out-of-pocket damages, reliance damages, benefit of the bargain damages, loss of value, lost profits, incidental damages and/or consequential damages.

41. Empire presented its claims to SWAT and SWAT did not pay the just amount owed within 30 days of the claim being presented. Pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code, Empire seeks to recover its reasonable attorney's fees incurred in prosecuting this lawsuit. Empire also seeks to recover its attorney's fees based on the parties' contractual agreement that "if Empire is the prevailing party in any legal action between Empire and customer relating to this transaction or the tools described in this Ticket, Empire shall be entitled to recover its reasonable and necessary attorney's fees incurred in the action".

## COUNT 2 - QUANTUM MERUIT

42. Empire incorporates by reference the allegations set forth in each of the preceding paragraphs as though they were set forth herein.

43. Empire asserts this claim in the alternative to its breach of contract claim.

44. Empire provided valuable goods and services to SWAT.

45. SWAT accepted Empire's goods and/or associated services.

46. SWAT had reasonable notice that Empire expected compensation for

8

SWAT's use of Empire's goods and the associated services provided by Empire.

47. Empire seeks to recover the reasonable value of the goods and services provided to SWAT, prejudgment and post-judgment interest, court costs, and attorney's fees pursuant to the parties' contract and Section 38.001 of the Texas Civil Practice and Remedies Code.

## COUNT 3 - FRAUD AND/OR FRAUDULENT INDUCEMENT
## (COMMON LAW FRAUD)

48. Empire incorporates by reference the allegations set forth in each of the preceding paragraphs as though they were set forth herein.

49. SWAT made a material misrepresentation to Empire. In July 2020, Johnny Holifield, SWAT's president, directed Mr. Greeson, a respected industry veteran, and senior executive at SWAT, to represent to Empire that SWAT would make Empire SWAT's exclusive vendor for torquing tools if Empire would give SWAT a discount on Empire's tools that Empire delivered to SWAT in Alaska in February 2020 (the "Exclusivity Misrepresentation").

50. SWAT knew at the time that the Exclusivity representation was false or lacked knowledge of its truth. SWAT never intended to keep its promise to make Empire SWAT's exclusive torque vendor. Mr. Holifield is the founder of SWAT and served as its president and CEO at all relevant times. Mr. Holifield is the person at SWAT who had ultimate authority on which vendors SWAT would use. Mr. Holifield testified that he never intended to make Empire SWAT's exclusive vendor

9

for torque tooling. Thus, Mr. Holifield acted with fraudulent intent when he directed Mr. Greeson to make a promise to Empire that SWAT would make Empire SWAT's exclusive vendor for torque tooling in exchange for a discount on rental fees from Empire. Mr. Holifield directed his vice president to make this promise to perform a future act at a time when Mr. Holifield had no present intent for SWAT to perform it. Falsely promising to perform a future act while having no present intent to perform it is fraud. *Int'l Bus. Machines Corp. v. Lufkin Indus.*, LLC, 573 S.W.3d 224, 228 (Tex. 2019)

51. SWAT intended that the Empire should rely or act on the Exclusivity Misrepresentation. SWAT made the Exclusivity Misrepresentation for the express purpose of inducing Empire to discount Empire's rental fees on the Alaska Project.

52. Empire relied on the Exclusivity Misrepresentation by allowing SWAT to keep Empire's tools in Alaska and not charging SWAT the rental fees owed by SWAT at the time for the large majority of the 29 weeks that SWAT had Empire's tools in Alaska.

53. Empire justifiably relied on SWAT's exclusivity representation made to Empire by Robert Greeson.

54. Empire's reliance on SWAT's misrepresentation injured Empire. In reliance on the Exclusivity Misrepresentation, Empire reduced its rental charges to SWAT by $514,393. Empire gave the bulk of this discount on July 13, 2020, shortly

after and in reliance on the Exclusivity Misrepresentation, when Empire issued Invoice No. 27985 to SWAT charging SWAT (5) five weeks of rent at $24,122 per week for SWAT's use of Empire's tools for March, April, May, June, and July 2020, instead of the (5) five months or rent actually owed by SWAT at that time. In addition, Empire gave subsequent discounts on the Alaska Project in reliance on the Exclusivity representation. In reliance on the Exclusivity Misrepresentation, Empire reduced its rental charges to SWAT by hundreds of thousands of dollars, resulting in Empire being injured by realizing hundreds of thousands of dollars less in profit that it otherwise would have on the job.

55. In addition, by allowing SWAT to keep Empire's tools in Alaska at SWAT's disposal at a discounted rental rate, that prevented Empire from renting those same tools to one of Empire's other customers at the normal rental rate.

56. Empire seeks to recover out-of-pocket damages, reliance damages, and all other relief to which Empire may be entitled to either at law or in equity.

57. Empire also seeks to recover exemplary damages from SWAT for its fraud in the maximum amount allowed by law.

### REQUEST FOR JURY TRIAL

58. Empire demands a trial by jury on all issues.

## CONDITIONS PRECEDENT

59. All conditions precedent to the claims asserted in this case, and the relief requested, have been satisfied, waived and/or are deemed to have been satisfied.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Empire prays that Empire takes judgment against SWAT, and that Empire recovers the following:

a) actual damages within the jurisdictional limits of this Court;

b) unjust enrichment;

c) exemplary damages, including punitive and enhanced damages;

d) prejudgment and post-judgment interest as allowed by law;

e) court costs;

f) attorney's fees; and

g) all other relief to which Empire is justly entitled.

May 17, 2022
Respectfully submitted,

THE LAW OFFICE OF SAMUEL D. DAVIS, PLLC

/s/ Samuel D. Davis
Samuel D. Davis, Esq.
State Bar of Texas No. 24055381
SD Tex. Bar No. 699933
2525 Robinhood Street, Suite 206
Houston, TX 77005
Tel: 713-800-2994
sdavis@samueldavislaw.com

DAVID A. NACHTIGALL, ATTORNEY AT LAW, PLLC
*/s/ David A. Nachtigall*
David A. Nachtigall
Federal Bar No. 1358606
State Bar No. 24049076
1545 Heights, Ste. 100
Houston, Texas 77008
Tel 713.229.0008
david@dntriallaw.com
**ATTORNEYS FOR PLAINTIFF**
**EMPIRE TORQUE TOOL, LLC**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 17, 2022, I served a true and correct copy of the foregoing on all counsel of record via email and the Court's CM/ECF system.

*/s/ Samuel D. Davis*
Samuel D. Davis